**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 09-00124-11** |
| **VERSUS** | **JUDGE DOHERTY** |
| **JULIAN ALBERTO VALENZUELA-BELTRAN** | **MAGISTRATE JUDGE HANNA** |

*FINDINGS AND RECOMMENDATION ON*
*MOTION TO SUPPRESS EVIDENCE*
(Rec. Doc. 225)

Before the court is defendant's Motion to Suppress Evidence.  The motion is
opposed.  An evidentiary hearing was held on April 7, 2010.  Testifying at the hearing
were defendant Julian Alberto Valenzuela-Beltran (Valenzuela) and Agent Chad
Hazelwood of the Drug Enforcement Agency task force (DEA).  Sergeant Scott Davis, an
officer with the Vermilion Parish Sheriff's Office, who initiated the stop of Valenzuela,
obtained his consent, and searched his vehicle, was not available to testify at the hearing
due to his deployment in Iraq.  After colloquy and advice, for purposes of this motion
only, defendant waived objection to the admission of Davis' reports surrounding the stop,
search, and arrest, and waived his right to confront Davis.  (R 3-7).

***Background and Argument***

Defendant was indicted on June 10, 2009, for the following felony offenses:
Count 1, Conspiracy to Possess with Intent to Distribute more than 50 Grams of
Methamphetamine and 500 grams of Cocaine, in violation of 21 U.S.C. § 846; Count 8,
Possession with Intent to Distribute Cocaine (Powder), in violation of 21 U.S.C. §§

1

841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; Count 10, Illegal Reentry of a Deported Alien, in violation of 8 U.S.C. § 1326(a); Count 36, Forfeiture, in violation of 21 U.S.C. § 853; and Count 37, Forfeiture, in violation of 18 U.S.C. § 924(d)(1).

In his motion, defendant asks the court to suppress all evidence seized and any statements made by him as a result of what defendant argues was an unlawful stop and search of his vehicle.

Defendant argues there was no probable cause for the stop, and no reasonable suspicion to justify a traffic stop. Contrary to the information set forth as a basis for traffic stop by Sergeant Davis, defendant argues and testified he was wearing his seat belt at all times, his windows were not illegally tinted, and he stopped completely at all stop signs.  (R12, 13).   Defendant emphasizes he was not issued any ticket for the alleged traffic violations.  Defendant agrees he gave Sgt. Davis consent to search his vehicle, but argues the consent was invalid because he was not advised and did not understand he had the right to withhold consent.

Defendant also testified, through an interpreter and in his affidavit, that he understands and speaks very little English.  (R 10).  However, his passenger, Francisco Delgado-Galaviz (Galaviz), understood and spoke English and served as an interpreter during the stop. (R 15, 16).  Defendant testified he understood, through Galaviz, the deputy wanted to search his vehicle and that he told the deputy, through Galaviz, that it

was "o.k. to search the vehicle."[1]  (R 16).  Defendant testified he did not know or understand he had a right to withhold consent, and he would have refused the search if he would have known he had such a right.[2] (R 16).

In opposition, the government argues the stop for traffic violations was valid from its inception due to Davis' belief Valenzuela was not wearing a seatbelt, his windows were illegally tinted, and he failed to come to a complete stop at a stop sign. Moreover, even if there were no traffic violations committed, the government argues Davis had probable cause for the stop.  Particularly, the government argues probable cause existed for the  stop based on the information given to Davis by Hazelwood that a confidential informant had just been in and exited Valenzuela's vehicle, and had informed Hazelwood that he had seen and held approximately one kilogram of cocaine in Valenzuela's car.

In addition to having probable cause for the stop, the government argues Davis had probable cause to search the vehicle.  Specifically, Davis' personal observations corroborated the information given him by Hazelwood regarding Valenzuela, his vehicle, and the cocaine in the vehicle –  Galaviz was seated in the back seat of the two-door vehicle while the front passenger seat was empty and it appeared the rear cup holder had been altered.  Moreover, a K-9 unit was called and the dog alerted on the vehicle.

Finally, the government argues defendant gave a valid consent to search the

---

[1]See also *Affidavit of Julian Alberto Valenzuela-Beltran* (Rec. Doc. 225-2).

[2]*Ibid.*

3

vehicle.  Galaviz translated the request to search from English to Spanish for Valenzuela, who was the registered owner and driver of the vehicle.  Valenzuela gave consent to search in Spanish, which Galaviz translated from Spanish to English for Davis.  For all these reasons, the government argues, the evidence should not be suppressed

### Applicable Law and Discussion

The issues in this matter are whether the initial stop of Valenzula's vehicle and its subsequent search were reasonable under the Fourth and Fourteenth Amendments of the United States Constitution.  "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'"  Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2031-2032, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970);  Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 26 L.Ed.2d 854 (1973).

One exception to the warrant requirement relevant to this matter is the automobile exception, which "allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband."  U.S. v. Fields, 456 F.3d 519, 523 (5th Cir. 2006), citing Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). "Probable cause is determined by examining the totality of the circumstances."  U.S. v. Fields, 456 F.3d 519, 523 (5th Cir. 2006), citing  Illinois v. Gates, 462 U.S. 213, 230-31,

4

103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Another of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Davis v. United States, 328 U.S. 582, 593-594, 66 S.Ct. 1256, 1261-1262, 90 L.Ed. 1453 (1946).

A comprehensive summary of the law regarding the seizure and search of vehicles was detailed in U.S. v. Alvarado-Ramirez, 975 F.Supp. 906, 911 (W.D.Tex. 1997), as follows:

> There is no question but that the stopping of an automobile by a police officer is a seizure within the meaning of the Fourth and Fourteenth Amendments. Brower v. County of Inyo, 489 U.S. 593, 596-97, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989); Delaware v. Prouse, 440 U.S. 648, 653, 661, 99 S.Ct. 1391, 1396, 1400, 59 L.Ed.2d 660 (1979); United States v. Shabazz, 993 F.2d 431, 434 (5th Cir.1993); United States v. Thomas, 787 F.Supp. 663, 669 (E.D.Tex.1992). A vehicle may lawfully be stopped (with one major exception, pertinent only in the border area, to be noted below) by a law enforcement officer only when there is probable cause to stop the vehicle or, lacking probable cause, when the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." See United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1, 10 (1989); United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975); United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995); United States v. Tellez, 11 F.3d 530, 532 (5th Cir.1993) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889). The latter type of stop is often referred to as an investigative or Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Cooper, 43 F.3d 140, 145 (5th Cir.1995). According to Terry, even in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity, United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir.1990). Such criminal activity includes traffic violations, however minor. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam) (stop for expired license plate); United States v. Kelley, 981 F.2d 1464 (5th Cir.1993) (stop

5

for seatbelt violation); <u>Breeland</u> 53 F.3d at 102; <u>Thomas</u>, 12 F.3d at 1366; United States v. Shabazz, 993 F.2d 431, 434-35 (5th Cir.1993); United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir.1994).  Probable cause means "a fair probability that contraband or evidence of a crime will be found," <u>Sokolow</u>, 490 U.S. at 7, 109 S.Ct. at 1585, 104 L.Ed.2d at 10; Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a <u>Terry</u> stop is obviously less demanding than that for probable cause. See <u>United States v. Montoya de Hernandez,</u> 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3310-11, 3312, 87 L.Ed.2d 381 (1985) . . .  Under <u>Terry</u>, the judicial inquiry into the reasonableness of the search or seizure "is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Shabazz, 993 F.2d at 435 (citing <u>Terry</u>, 392 U.S. at 19, 88 S.Ct. at 1879).

Further, even if the initial stop of Valenzuela was illegal due to lack of probable cause or reasonable suspicion, if Valenzuela's consent to search was valid the evidence seized need not be suppressed.  The court in <u>Alvarado-Ramirez</u> explained as follows:

Simply because the initial stop of Defendant was illegal does not mean that the evidence seized must necessarily be suppressed. If the Defendant voluntarily consented to the search, even if the consent was given during a period of illegal detention, the search becomes validated and the evidence seized need not be suppressed. See <u>Shabazz</u>, 993 F.2d at 439 n. 10. To be valid, consent to search must be free and voluntary. <u>United States v. Kelley,</u> 981 F.2d 1464, 1471 (5th Cir.1993) (quoting <u>United States v. Olivier-Becerril</u>, 861 F.2d 424, 425 (5th Cir.1988)). Where the initial stop is proper, the government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary. <u>Kelley</u>, 981 F.2d at 1470; United States v. Yeagin, 927 F.2d 798, 800 (5th Cir.1991). However, where consent is preceded by a Fourth Amendment violation, the government has a heavier burden of proving consent. <u>Kelley,</u> 981 F.2d at 1470; <u>United States v. Ruigomez</u>, 702 F.2d 61, 65 (5th Cir.1983). The voluntariness of consent is a "question of fact to be determined from the totality of the circumstances." <u>Kelley</u>, 981 F.2d at 1470 (quoting <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973)).

<u>U.S. v. Alvarado-Ramirez</u>, 975 F.Supp. 906, 919 (W.D.Tex. 1997).

## I.    Was the stop supported by probable cause or reasonable suspicion?

Hazelwood testified he advised Davis that the driver of the Honda Accord was in possession of cocaine.  (R 35).  Hazelwood testified a confidential informant (CI) had been sitting in the car with Valenzuela and Galaviz at the McDonald's in Abbeville, and the CI had left the car and reported to Hazelwood that he had just held and observed a kilogram of cocaine located in the car. (R 34).  Hazelwood testified the CI was a "reliable cooperating source."  (R 31).  Hazelwood also testified the CI was under visual surveillance and audio monitoring:

> A.    We had visual surveillance on the cooperating individual as well as an audio monitoring device on the individual so we had eyes and ears during this operation.  We actually watched as a cooperating individual wait at the McDonald's we watched a two door black Honda 00 Accord - - we watched a two door black Honda Accord arrive at the McDonald's.  The vehicle was driven by Mr. Beltran or Valenzuela.  Also the passenger was Delgado-Galaviz.  The cooperating individual exited his vehicle and entered the black Honda Accord in the front passenger seat.  At that point, the cooperating individual had a short conversation, exited the vehicle and signaled to us on the audio monitoring device that he had just held and observed a kilogram of cocaine.  Once they departed the McDonald's , we utilized a marked Vermilion Parish cruiser operated by Sergeant Scott Davis to stop the vehicle.
>
> Q.    And so did you advise Sergeant Davis that the driver of the Honda Accord was in possession of cocaine?
>
> A.    Yes, ma'am.
>
> Q.     Did Mr. Davis actually stop the vehicle.
>
> A.    Yes, ma'am, he did.

(R 34, 35).

The information given to Davis by Hazelwood was corroborated by Davis' observation that Valenzuela was driving the two-door Honda Accord with the front passenger seat empty and the passenger sitting in the back seat.  Valenzuela specifically testified the front passenger seat was empty and Galaviz was riding in the backseat "[b]ecause another person had already seated [sic] in the front seat."  (R 13, 23). Valenzuela also testified he was coming from the McDonald's.  (R 23).  The undersigned finds there was a fair probability that cocaine would be found in Valenzuela's car, as reported by Hazelwood to Davis, and the stop was justified by probable cause.  Therefore, the undersigned does not reach the issue of whether the stop was justified under the lesser requirements of <u>Terry</u> due to the alleged suspected seat belt, window tint, and stop sign violations.

The undersigned also finds Davis had probable cause to conduct the search of the car.  In addition to having corroborated the information relayed by Hazelwood, i.e. the empty front passenger seat with a passenger in the rear passenger seat, Davis noted the cupholder in the rear of the car looked as if it had been removed and replaced.[3]   Consistent with the report of Davis, Valenzuela testified dogs were run around his car before the search and they alerted for drugs in the car.  (R 24).

The Fifth Circuit has held a canine sniff is not a search itself, but a canine alert establishes probable cause to search a vehicle.  See <u>U.S. v. Dortch</u>, 199 F.3d 193 (5th Cir.

---

[3]*Deputy's Initial Report* (See Government's Exhibits)(Rec. Doc. 254).

1999), referencing United States v. Seals, 987 F.2d 1102, 1006 (5th Cir. 1993) and United States v. Zucco, 71 F.3d 188, 191-192 (5th Cir. 1995).

The undersigned finds the seating arrangement which corroborated the information provided by the CI and Hazelwood, the information the CI provided that there was cocaine in the vehicle, the altered cup holder, and the canine "alert" established probable cause to search the vehicle.

**II.    Did Valenzuela voluntarily consent to the search of his vehicle?**

Valenzuela testified that he gave consent to Davis to search his vehicle. (R 16, 23). However, Valenzuela argues the consent was not voluntary because he did not understand that he had a right to refuse the consent.

The record contains no indication Davis told Valenzuela he could withhold consent to the search.  Valenzuela testified he did not understand he had the right to refuse the search of the vehicle, and if he had, he would not have consented to the search. (R 16).

The Fifth Circuit in United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1988), explained voluntary consent as follows:

> To be valid, consent to search must be free and voluntary. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Galberth, 846 F.2d 983 (5th Cir.1988). The Supreme Court has stated that whether consent is voluntary is "a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).
>
> We have focused on six factors in the inquiry whether consent to a search is voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

Galberth, 846 F.2d at 987 (citing United States v. Ruigomez, 702 F.2d 61 (5th Cir.1983)). In doing so, we have noted that "although all of the above factors are highly relevant, no one of the six factors is dispositive or controlling of the voluntariness issue." Id. (citing United States v. Gonzales, 842 F.2d 748 (5th Cir.1988)).

Consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." Schneckloth v. Bustamonte, 412 U.S. 218, 235, 93 S.Ct. at 2052 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).  "Proof of knowledge of the right to refuse consent is not required to show voluntariness." United States v. Olivier-Becerril, 861 F.2d at 426 citing United States v. Davis, 749 F.2d 292, 296 (5th Cir. 1985). Therefore, while a factor in the analysis, Valenzuela's lack of knowledge that he could refuse to consent is not necessarily given controlling weight. See U.S. v. Watson, 423 U.S. 411, 96 S.Ct. 820 (1976), referencing Schneckloth,  412 U.S. 218, 235, 93 S.Ct. at 2052 (1973).

Valenzuela testified that he consented to the search of his vehicle, using Galaviz as a translator.  (R 16, 23).  Valenzuela does not argue and did not testify that he was coerced or threatened in any way prior to giving consent to search.  He testified he had been in and out of the United States multiple times since 1999, illegally, and had even been deported at one time.  ( R 10, 17, 18).  He testified he had a high school education and understood at

least some English. (R 5, 10).  When advised of his Constitutional rights on multiple

occasions during the hearing, it was clear to the undersigned he understood what he was

being told as well as the implications of his decisions. (R 5, 6).  He testified he purchased,

insured and registered a vehicle in the United States, using the English language. (R 18 -

21).  He also was employed in multiple capacities and locations in the United States. (R

17).

The undersigned finds the cooperation and willingness of the defendant to consent to

the search asked of him in his native language, the lack of coercion or threats, coupled with

the defendant's education, intelligence and life experience, support a finding that

Valenzuela's consent was voluntary.

For the reasons given above, the undersigned finds Valenzuela's consent to search

his vehicle was voluntary, under either a preponderance of the evidence or a heavier

standard, and the evidence seized as a result of the search need not be suppressed.

However, even if the consent was not voluntary and cannot support the warrantless search

and seizure, the undersigned finds both the initial stop and subsequent search of

Valenzuela's vehicle supported by probable cause.

### *Conclusion and Recommendation*

The undersigned finds both the stop of the vehicle and the subsequent search were

supported by probable cause.   Moreover, Valenzuela consented to the search of his vehicle,

and the government has shown under either a preponderance of the evidence or heavier

burden that his consent was voluntary.  Therefore,

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that the

Motion to Suppress Evidence (Rec. Doc. 225) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within fourteen (14) days after being served with a

copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within**

**fourteen (14) days following the date of its service, or within the time frame**

**authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either**

**the factual findings or the legal conclusions accepted by the District Court, except**

**upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>,**

**79 F.3d 1415 (5<u>th</u> Cir.  1996).**

Signed in Lafayette, Louisiana, this 21st day of April, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)